IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JIMMY L. ABRON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12-0337-CV-W-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security. ) | |
| ) | |

**ORDER AND OPINION REVERSING COMMISSIONER'S FINAL DECISION
AND REMANDING FOR RECONSIDERATION**

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his applications for disability benefits and supplemental security income benefits. The Commissioner's decision is reversed, and the case is remanded for reconsideration consistent with this Order.

The Court presents a brief recitation of the background to provide context for its conclusions. Plaintiff was born in August 1961. When he was thirteen, Plaintiff's leg was amputated above the knee. He completed the tenth grade and the ALJ found he has "a limited education." R. at 20, 34. Plaintiff has prior work experience as an auto mechanic that qualifies as substantial gainful activity. The instant application for Supplemental Security Income Benefits was filed in January 2009, alleging Plaintiff became disabled in December 2007 due to a combination of depression, back pain, and other ailments.

1. In July 2009, Plaintiff experienced what the ALJ described as "several stressful life events: he was not working, had just broken up with his girlfriend, and would soon be homeless." R. at 13. Plaintiff was seen by a psychiatrist, Dr. Nallu Reddy, who diagnosed Plaintiff as suffering from major depression, assessed his GAF score at 34, and prescribed medication. This situation persisted, according to Dr. Reddy, until at least March 2010. Despite the records and opinions of Dr. Reddy and Plaintiff's treating

1

physician (Dr. David Dembinski), the ALJ determined Plaintiff's depression was not severe because it imposed no limitations on Plaintiff's work-related capabilities. In reaching this conclusion, the ALJ conducted his own analysis of the Diagnostic and Statistical Manual of Mental Disorders and decided Plaintiff could not have a GAF score of 34 and was not depresseed. R. at 14-16. While the facts in a particular case may permit an ALJ to disbelieve a doctor's opinion, e.g.,.Anderson v. Astrue, 696 F.3d 790, 793-094 (8th Cir. 2012); Halverson v. Astrue, 600 F.3d 922, 929-30 (8th Cir. 2010), Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996), the ALJ is not allowed to substitute his medical judgment for that of a doctor. E.g., Finch v. Astrue, 547 F.3d 933, 938 (8th Cir. 2008) (citing Ness v. Sullivan, 904 F.2d 432, 435 (8th Cir. 1990).

An ALJ may solicit additional information from a doctor, refer the claimant for a consultative examination, or elicit testimony from a medical expert to explain the records provided by the claimant's doctors. The ALJ did none of these things. Here, the ALJ did not simply reject a doctor's opinion about a claimant's abilities: the ALJ "re-diagnosed" the claimant, inserting his own medical diagnosis in place of the doctors'. The ALJ cannot do this.

2. Plaintiff reported experiencing "phantom pain" from his amputated leg. The ALJ rejected this claim because "there is no testing done to prove the existence of his alleged phantom pain." R. at 18. The Court is not aware of any objective "test for pain," so the Court does not see how the absence of such a test bears on Plaintiff's credibility.

The Commissioner argues pain, alone, cannot be disabling, and that a claimant's subjective complaints cannot substantiate a disability claim absent an objective medical diagnosis. To the extent the Commissioner is contending phantom pain cannot be the basis for a disability, the Court disagrees. At a minimum, "phantom pain" appears to be a mental effect of a physical condition (i.e., amputation) that, in appropriate circumstances, might substantiate a claim for disability. Such pain would have to exist (or be expected to exist) for more than a year and meet the other requirements, but pain – phantom or otherwise – cannot be rejected out of hand.

The ALJ observed that Plaintiff was able to work with this phantom pain. R. at 18. Had Plaintiff rested his disability claim solely on the existence of phantom pain, this

2

observation would provide valid grounds to reject the claim. However, the fact that Plaintiff worked with the pain for many years does not mean that the pain did not exist. Thus, when Plaintiff alleges (as he has done in this case) that he suffers from *additional* medical and ailments that, in combination with the pre-existing pain preclude him from working, the ALJ is obligated to consider the effects of all of Plaintiff's ailments in ascertaining the residual functional capacity. "A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence." McCoy v. Astrue, 648 F.3d 604, 614 (8th Cir. 2011).

The ALJ rejected the existence (and effects) of pain because (1) there was no objective test for pain performed and (2) Plaintiff was able to work with the pain. The former point makes no sense, and the latter point does not support the conclusion. Plaintiff may have experienced pain that, alone, did not disable him, but did when combined with other, later-developed ailments. Thus, the ALJ's rationale for rejecting all possible effects of pain are not supportable.

3.     The ALJ found Plaintiff can "perform sedentary work . . . except the claimant can only kneel, stoop, crouch, crawl, push and pull only occasionally." R. at 17. Later, the ALJ noted the Medical-Vocational Guidelines can be used to direct a decision only if there are no nonexertional limitations. However, after observing Plaintiff had nonexertional limitations that precluded him from performing the full range of sedentary work, the ALJ proceeded to use the Guidelines anyway after opining that Plaintiff's "additional limitations have little or no effect on the occupational base of unskilled sedentary work." R. at 21. This was erroneous because the ALJ did not indicate how the Record supported such a finding, and the Court's independent review does reveal any evidentiary support for this finding. See Reed v. Sullivan, 988 F.2d 812, 816 (8th Cir. 1993).[1]

4.     It is not clear that the ALJ performed a proper credibility analysis. The familiar standard for analyzing a claimant's subjective complaints (including subjective complaints of pain) is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

---

[1]Of course, the RFC may change depending on the findings made on remand, necessitating a new analysis at step five in any event.

3

Case 4:12-cv-00337-ODS   Document 13   Filed 12/07/12   Page 3 of 5

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322. While current regulations incorporate these considerations, the Eighth Circuit has declared that the "preferred practice" is to cite Polaski. Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007).

The ALJ cited some of these factors, but it is not clear that all were considered. Moreover, the Commissioner now defends the final decision, in part, by arguing that pain "by itself cannot constitute a medically determinable impairment." Commissioner's Brief at 7. This position seems contrary to Polaski. Inasmuch as the case must be reversed and remanded for other reasons, the Court deems it appropriate for the Commissioner to re-assess Plaintiff's credibility as well. In reevaluating Plaintiff's credibility, the

4

Commissioner will also reconsider all of the evidence bearing on Plaintiff's residual functional capacity.

5.  Plaintiff asks for an order requiring the Commissioner to calculate and award benefits.   This relief is justified only if the Record conclusively establishes Plaintiff's right to benefits.   The Court holds this is not the case: Plaintiff's entitlement to benefits depends on the proper resolution of factual matters that are committed to the Comissioner's determination.

For these reasons, the Comissioner's final decision is reversed and the case is remanded for further proceedings.

IT IS SO ORDERED.


DATE : December 7, 2012

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

5